UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VINSON GIBBS                                                          PLAINTIFF

V.                                         CIVIL ACTION NO. 3:14CV650 DPJ-FKB

KELLY SERVICES AND
NISSAN NORTH AMERICA, INC.                                          DEFENDANTS

ORDER

This employment-discrimination action is before the Court on the motions of Kelly

Services [60] and Nissan North America, Inc. [62] for summary judgment pursuant to Federal

Rule of Civil Procedure 56.  Plaintiff Vinson Gibbs has responded in opposition [65, 66] to both

motions.  The Court, having considered the memoranda and submissions of the parties, finds that

Defendants' motions should be granted.

I.      Facts and Procedural History

Plaintiff Vinson Gibbs began work as a Kelly Services temporary employee assigned to

the Nissan auto-manufacturing plant in August 2012.  This suit arises from disputes related to

Gibbs's absenteeism and timekeeping practices.

        A.      Absenteeism

All Kelly Services employees at Nissan are subject to an attendance policy which assigns

points for both approved and unapproved absences.  Once an employee reaches a certain number

of points, he or she will receive a corrective action such as verbal and written reminders.  On

May 8 and August 5, 2013, Gibbs felt ill and visited the onsite medical clinic run by CHS Health

Services ("CHS"), a third party under contract with Nissan.  CHS detected high blood pressure

both days and sent Gibbs home.  For these absences, Gibbs was assigned four points—two per

incident.  Reminder [62-8].  This prompted a written reminder on August 27, 2013, for

unacceptable attendance. *Id.* Believing that the assignment of points amounted to disability discrimination, Gibbs filed a complaint with the Equal Employment Opportunity Commission.

B.      Timekeeping

Employees at Nissan enter the plant through turnstiles via swiped identification cards. After passing through the turnstiles, Gibbs would then sign a log kept in his supervisor's office. On October 3, approximately six weeks after filing the EEOC charge, Nissan manager Brad Caldwell witnessed Gibbs, who had started his shift at 11:00 a.m., leaving the plant at 12:48 p.m. Caldwell requested an investigation, which revealed that Gibbs had left and returned to the plant on several occasions during his shift hours. After comparing the turnstile records and the time logs, Defendants concluded that Gibbs had been paid for over eight hours of work he did not complete. His employment was terminated for falsification of time records.

After receiving notice of his right to sue on his disability claim, Gibbs filed this action against Nissan and Kelly Services alleging disability discrimination and retaliation under the ADA, and violation of the Family Medical Leave Act. Following discovery, both Defendants moved for summary judgment, and Gibbs dropped the FMLA claims. The remaining issues are fully briefed, and the Court is prepared to rule.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

2

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

A.    Disability Discrimination

The Americans with Disabilities Act (ADA) prohibits discrimination on the basis of a disability. As with other anti-discrimination statues, a plaintiff attempting to prove discrimination using circumstantial evidence must satisfy the *McDonnell Douglas* burden-shifting framework. *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). The plaintiff must first make out a prima-facie case of discrimination by showing: (1) he is disabled, has a record of having a disability, or is regarded as disabled; (2) he is qualified for his job; (3) he was subjected to an adverse employment action; and (4) he was replaced by or

treated less favorably than a non-disabled employee.  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).[1]

If the employee states a prima facie case, the employer must articulate a legitimate non-discriminatory reason for the adverse employment action.  *Id.* at 231.  Finally, the burden shifts back to the plaintiff to show that the articulated reason is pretext for discrimination.  *Id.* Defendants argue that Gibbs cannot meet any of the prongs of a prima-facie case of disability discrimination, nor can he show pretext.

1.  Disability

Gibbs submits that Defendants regarded him as disabled due to his high blood pressure. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  "The amended 'regarded as' provision reflects the view that 'unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are just as disabling as actual impairments.'"  *Cannon v. Jacobs Field Servs. N. Am., Inc.*, No. 15-20127, 2016 WL 157983, at *4 (5th Cir. Jan. 13, 2016) (quoting 29 C.F.R. § Pt. 1630, App. § 1630.2(1)).  A plaintiff is no longer required to show that the employer regarded him as being substantially limited in a major life activity.  *Id.*

---

[1]  There is some authority suggesting that the fourth element—being replaced by or treated less favorably than a non-disabled employee—is inapplicable in a case of disability discrimination, though Gibbs does not make that argument.  *See E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 696 (5th Cir. 2014); *but see Burton*, 798 F.3d at 230 (using fourth prong); *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 (5th Cir. 2015) (same);  *see also* Pl.'s Resp. [66] at 4 (including the fourth prong).

Defendants argue that even assuming they knew Gibbs was sent home for high blood pressure on May 8 and August 5, that would not support a finding that they regarded him as having a disability. *See* Nissan Mem. [63] at 14 (citing *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015) (affirming summary judgment on ADA claim and rejecting argument that it could be implied that the employer regarded the plaintiff as disabled because it was aware of his heart surgery). Defendants' argument has some appeal. Gibbs missed two days over a three month period, which—absent other competent evidence—would not seem to suggest a finding that he was sent home because Defendants perceived him as having a disability. Still, the Court need not reach the issue because there was no adverse action taken.[2]

2.     Adverse Employment Action

Gibbs states in his Complaint that he was sent home and assigned attendance points in violation of the ADA. *See* Compl. [1-2] at 7. Defendants contend that even if true, Gibbs fails to allege an adverse employment action. *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (noting that adverse employment actions are ultimate employment decisions such as hiring, firing, demoting, promoting, and compensating).

There seems to be no dispute that the attendance points alone would not constitute an adverse employment action, nor would sending an employee home on two days, though the parties do not directly address it. But Gibbs's response muddies the water with respect to the

---

[2]Factually, the parties discuss the various actions by Kelly, Nissan, and CHS, but there is no legal analysis with respect to the relationships among those entities and Gibbs. For example, no one addresses who constituted the statutory employer. Similarly, CHS diagnosed the high blood pressure and decided to send Gibbs home. Plaintiff states—without legal authority—that both Defendants are responsible for those decisions, but the parties do not analyze the issue. Because the claim is otherwise deficient, the Court has not attempted to separate Kelly, Nissan, and CHS.

adverse actions he contends are in dispute.  He states:  "As for attendance points, the Plaintiff does not contend that they constituted an 'adverse employment action' in itself but does regard it as the *lack of an accommodation* because he was sent home and then assigned attendance points."  Resp. [65] at 6 (emphasis added).  In addition, Defendants construe some of Gibbs's arguments as suggesting that he also believes Defendants terminated his employment because they regarded him as having a disability.

Defendants argue that any claims other than the one related to the attendance points are too little too late.  As they note, Gibbs's EEOC charge, his deposition testimony, and his Complaint tie the discrimination claim to the attendance points and the retaliation claim to the termination of his employment.  *See* EEOC Charge [66-5] (complaining that he was sent home and given points for high blood pressure and claiming the "company's policy" discriminates "against individuals because of sickness and disability"); Gibbs Dep. [66-1] at 20–21 (testifying that his termination was in retaliation for filing an EEOC charge); Compl. [1-2] at 7 (complaining that he was sent home and charged with points in violation of the ADA).  Similarly, Gibbs did not raise a failure-to-accommodate claim in his Complaint or EEOC charge.

Gibbs may not assert new claims in response to Defendants' motions.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (claim raised in response is not properly before the court).  And any amendment to the Complaint at this point would be futile because Gibbs failed to exhaust these other claims.  *See Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005) (failure to raise claim in EEOC charge is a failure to exhaust).[3]

---

[3] The accommodation claim suffers other deficiencies, such as lack of proof that Gibbs requested accommodation.  *See* Nissan Reply [69] at 4 n.1.  Moreover, Gibbs set forth the four-part test for disparate treatment under the ADA in his Response, confirming that his theory of

In the end, Gibbs's disparate-treatment claim under the ADA is premised on Defendants' decision to assign attendance points and/or send him home on two days.  Compl. [1-2] at 7. Neither constitutes an ultimate employment decision, and therefore neither presents an adverse employment action.  For this reason alone, the ADA discrimination claim must be dismissed.

### 3.      Less Favorable Treatment

As to the fourth prong, Defendants submit that Gibbs cannot show that a non-disabled employee was treated more favorably under nearly identical circumstances with respect to the point system.  Gibbs does not dispute the point, which is an independent basis for dismissal. Gibbs does, however, contend, without citation to record evidence, that he "was replaced by a Kelly employee who was not disabled."  Resp. [66] at 7.  Again, the termination is not the subject of his ADA claim.  Even if it was, it would fail on this point for lack of record evidence. *See TIG Ins.*, 276 F.3d at 759 (holding that unsupported statements from counsel are not a proper response).  The Court has no obligation to "sift through the record in search of evidence to support a party's opposition to summary judgment."  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)). Accordingly, Gibbs has failed to meet his burden as to the fourth element—assuming it applies.

In summary, Gibbs's ADA discrimination case falls short because he fails to create a jury question as to two of the elements of the prima facie case.  As such, there is no need to determine whether he can show pretext.

---

discrimination relates to disparate treatment, not failure to accommodate.  *See* Resp. [65] at 4.

B.      Retaliation

It is unlawful for an employer to retaliate against an individual for making a charge of discrimination.  To make out a prima facie case of retaliation, Gibbs must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.  *Turner v Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  For purposes of summary judgment, Defendants assume that Gibbs can make a prima facie showing but argue that he cannot show the decision to terminate his employment was pretextual.  Nissan Mem. [63] at 17.  Specifically, Defendants submit that Gibbs was fired after an investigation revealed he was falsifying his time records.

Because Defendants offered a legitimate, non-retaliatory reason for the decision, Gibbs must show that "the adverse action would not have occurred 'but for' the employer's retaliatory motive."  *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."  *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

In an effort to show pretext, Gibbs first points out that he was fired within forty-five (45) days of filing his EEOC complaint.  Resp. [65] at 9.  While temporal proximity is generally considered an acceptable means of establishing a causal link at the *prima-facie stage*, it is not a

method of proving "but for" causation.  *See Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).[4]

Second, Gibbs attempts to cast doubt on the timekeeping investigation, arguing that it included "questionable turnstile reports," challenging the lack of video records, and complaining that the only eyewitness is deceased.  Resp. [65] at 9.  But these arguments miss the mark.  Anti-discrimination statutes "do not require an employer to make proper decisions, only non-retaliatory ones."  *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (noting that "even an incorrect belief that an employee's performance is inadequate" is a legitimate reason).  The question is whether the employer has an honest belief in its proffered nondiscriminatory reason. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (5th Cir. 2007).  Stated differently, the inquiry is "'whether the employer made a reasonably informed and considered decision before taking' the complained-of action."  *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 788, 807 (6th Cir. 1998)).

Here, there is no dispute that Nissan Senior Manager Brad Caldwell reported seeing Gibbs leave the facility during working hours.  *See* Pl.'s Resp. [66] at 3.  Thereafter, Kelly employee Daniel Ball was asked to investigate.  Ball testified that he reviewed the turnstile records, compared them to Gibbs's time log, and confronted him with the disparities.  Ball Dep. [62-13] at 6–10.  According to Ball, Gibbs "admitted that he left the facility at these times.  However, he couldn't recall the explanation as to why he left the facility at these times."  *Id.* at 8.

---

[4] Gibbs also included language about "mixed motive"; however, the "but for" standard is applicable to ADA retaliation claims.  *See Feist*, 730 F.3d at 454.

In his declaration, Gibbs at least acknowledged telling Ball, "I don't know or I am not sure" when asked about various discrepancies.  Gibbs Decl. [66-2] ¶ 19.

Ball then prepared a report detailing a total of 8 hours and 49 minutes of time between September 2 and October 3, 2013, that Gibbs was paid for, but was not on the premises.  Report [62-12].  He recommended immediate termination for falsifying time, *id.* at 4, the sanction called for in the employee handbook, Handbook [61-5] at 179.  That recommendation was approved by four members of management.  Report [62-12] at 1.  Significantly, Ball testified that at the time of his investigation, he had no idea Gibbs had filed a charge of discrimination.  Ball Dep. [62-13] at 15.  In the end, Gibbs must do more than argue that Defendants made an incorrect decision or conducted a less-than-perfect investigation.  *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (holding that "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision").  Likewise, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."  *LeMaire*, 480 F.3d at 391; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact.").  Because Gibbs has not shown that Defendants' decision would not have been made "but for" his protected activity, summary judgment on his retaliation claim is appropriate.

IV.    Conclusion

The Court has considered all arguments raised by the parties.  Those not addressed in this Order would not have changed the outcome.  For the reasons described, Defendants' motions [60, 62] for summary judgment are granted.  Plaintiff's claims are dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 4th day of March, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE